**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MICHAEL E. SHADE, On Behalf of Himself ) 
and All Others Similarly Situated, )
 )
              Plaintiff, )
 )
 )
 )  Case No._____
      v. )
 )  JURY TRIAL DEMANDED
MATTERSIGHT CORPORATION, KELLY )
D. CONWAY, TENCH COXE, PHILIP R. )  CLASS ACTION
DUR, HENRY J. FEINBERG, JOHN T. )
KOHLER, DAVID B. MULLEN, MICHAEL )
J. MURRAY, and JOHN C. STALEY, )
 )
           Defendants. )

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

    Plaintiff Michael E. Shade ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

    1.    This is a class action brought on behalf of the public stockholders of Mattersight Corporation ("Mattersight" or the "Company") against Mattersight and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer on a proposed transaction, pursuant to which Mattersight will be acquired by NICE Ltd. through its wholly-

owned subsidiaries NICE Systems, Inc. ("Parent") and NICE Acquisition Sub, Inc. ("Purchaser" and together with NICE Ltd. and Parent, "NICE") (the "Proposed Transaction").

2.      On April 26, 2018, Mattersight issued a press release announcing it had entered into an Agreement and Plan of Merger with NICE dated April 25, 2018 (the "Merger Agreement") to sell Mattersight to NICE.  Under the terms of the Merger Agreement, Purchaser commenced a tender offer (the "Offer") to purchase all of the outstanding shares of Mattersight common stock for $2.70 per share ("Offer Price") and all of the outstanding shares of Mattersight preferred stock for $7.80 per share ("Preferred Offer Price").  The Offer commenced on May 10, 2018 and will expire at 11:59 p.m. New York Time, at the end of June 7, 2018.

3.      On May 10, 2018, Mattersight filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Mattersight stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Mattersight's financial projections, including the financial projections relied upon by Mattersight's financial advisor, Union Square Advisors LLC ("Union Square"); (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Union Square; and (iii) Mattersight insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Mattersight stockholders need such information in order to make a fully informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

4.      In short, the Proposed Transaction will unlawfully divest Mattersight's public stockholders of the Company's valuable assets without fully disclosing all material information

concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper under 28 U.S.C. § 1391 as well as under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because the conduct at issue had an effect in this District; and the Company is incorporated in this District.

## PARTIES

8.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Mattersight.

9.    Defendant Mattersight is a Delaware corporation with its principal executive offices located at 200 W. Madison Street, Suite 3100, Chicago, Illinois 60606. Mattersight is a leader in behavioral analytics and a pioneer in personality-based software products. The Company's common stock is traded on the NASDAQ Global Market under the ticker symbol "MATR."

10.     Defendant Kelly D. Conway ("Conway") has been President, Chief Executive Officer ("CEO") and a director of the Company since May 1999.

11.     Defendant Tench Coxe ("Coxe") has been Chairman of the Board and a director of the Company since February 2000.

12.     Defendant Philip R. Dur ("Dur") has been a director of the Company since December 2011.

13.     Defendant Henry J. Feinberg ("Feinberg") has been a director of the Company since May 2007.

14.     Defendant John T. Kohler ("Kohler") has been a director of the Company since May 1999.

15.     Defendant David B. Mullen ("Mullen") has been a director of the Company since March 2009.

16.     Defendant Michael J. Murray ("Murray") has been a director of the Company since June 1999.

17.     Defendant John C. Staley ("Staley") has been a director of the Company since August 2002.

18.     Defendants Conway, Coxe, Dur, Feinberg, Kohler, Mullen, Murray and Staley are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19.     NICE Ltd. is a provider of cloud and on-premises software solutions and is organized under the laws of the State of Israel.  NICE Ltd. shares trade on the Tel Aviv Stock Exchange and NICE Ltd. ADRs trade on the NASDAQ under the ticker symbol "NICE."

4

20.     Parent is a wholly owned subsidiary of NICE Ltd.  It is a Delaware corporation with its principal executive offices located at 221 River Street, Hoboken, New Jersey 07030.

21.     Purchaser is a Delaware corporation and a wholly-owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Mattersight common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

24.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of May 7, 2018, there were approximately 33,307,647 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Mattersight or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

25.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

(c)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(d)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

26.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background

29.     Mattersight, formerly known as eLoyalty Corporation, was incorporated in 1999 as a spin-out from Technology Solutions Company ("TSC").  The Company uses patented applications such as predictive behavioral routing, performance management, quality assurance and predictive analytics (collectively, "Behavioral Analytics") to analyze and predict customer behavior based on the language exchanged between agents and customers during brand interactions.  Mattersight's solutions have influenced companies including, healthcare, insurance, financial services, technology, telecommunications, cable and utilities, among others.

30.     The Company operates in a single business segment focused primarily on Behavioral Analytics.  Through the sale of its services, Mattersight generates subscription revenue, which is derived from its Behavioral Analytics service offerings, and other revenue.

31.     Following Mattersight's refinancing in the second quarter of 2017, the Company began to see improved financial results in subsequent quarters.

32.     For example, on November 7, 2017, the Company announced its third quarter of 2017 financial results, including subscription revenue of $10.6 million, an 11% increase compared to the third quarter of 2016 and total revenue of $11.3 million, a 9% increase from the third quarter of 2016.

33.     On January 9, 2018, the Company issued a press release announcing it was recently granted four new patents, bringing the Company's total number of patents to 45 at the end of 2017.   Mattersight's Chief Technology Officer, Chris Danson, commented on this achievement, stating:

> We're really excited about all four of these patents and what they represent for the future of our products. . . . We're constantly looking at new technologies that can further our mission to use analytics to create stellar customer experiences. These patents are clear evidence that we continue to evolve our products and expertise in understanding personality and leveraging it for better experiences across all interactions, including over-the-phone, face-to-face, human-to-human, and human-to-robot interactions.

34.     On February 14, 2018, the Company announced its fourth quarter of 2017 financial results.  For the quarter, subscription revenue was $12.7 million, a 12% increase from the fourth quarter of 2016 and total revenue was $13.6 million, a 9% increase from the fourth quarter of 2016.  Defendant Conway commented on the Company's continued success stating, "[w]e set a new record for quarterly revenue, and saw continued improvement on the cost side resulting from a more favorable product mix and improved operating efficiency."

**The Sale Process**

35.     The Board and Mattersight's senior management team has, from time to time, considered a variety of strategic alternatives to Mattersight's business strategies as an

independent company, including consideration of potential changes to Mattersight's strategy and direction, potential partnerships and other strategic transactions, potential acquisitions, and a possible sale of Mattersight.

36.     On February 8, 2017, the Board met and discussed, among other things, Mattersight's business outlook, strategic goals and associated capital needs, as well as potential strategic transactions, including a possible sale of Mattersight and a going private process.  The Board authorized senior management to engage with an investment banker to explore the possibility of selling Mattersight, as well as pursuing an equity financing to provide additional working capital to Mattersight.

37.     Later in February 2017, members of management met with Union Square to discuss Mattersight's business, interest that had been expressed in Mattersight historically from potential strategic buyers and financial sponsors, and Union Square's perspectives on Mattersight's business and its position in its market.

38.     On October 4, 2017, the Board held a special meeting and authorized defendants Conway and Mullen to formally engage Union Square for purposes of exploring a potential sale of Mattersight.

39.     On November 8, 2017, the Board directed Union Square to begin a formal sale process of Mattersight and to reach out to a list of potential buyers that the Board reviewed.

40.     On January 19, 2018, at the direction of senior management, Union Square sent initial bid instruction letters to six interested parties, including parties identified in the Recommendation Statement as Party A, Party B and Party D, establishing an initial bid deadline of February 1, 2018.

41.     On January 31, 2018, the Board held a special meeting and directed Union Square to reach out to two additional parties, including NICE, to gauge their potential interest in acquiring Mattersight.

42.     On February 1, 2018, Party B submitted to Union Square a non-binding preliminary proposal to acquire Mattersight for $3.48 per share of common stock in cash.

43.     On February 8, 2018, the Board met and directed Union Square to continue to facilitate discussions with, and seek proposals or revised proposals from interested parties, including the four active parties as of the initial bid deadline (Parties A, B, C and D), as well as any newly contacted parties, including NICE.

44.     On February 27, 2018, representatives of Union Square held an initial discussion with representatives of Party E, a newly-formed financial sponsor, after a representative of Party E contacted defendant Conway to express an interest in potentially acquiring Mattersight.

45.     On March 1, 2018, Union Square sent four second round process letters to Party B, Party C, NICE and Party E, and indicated a second round bid deadline of March 9, 2018.

46.     On March 9, 2018, NICE submitted a non-binding proposal to Union Square indicating a willingness to acquire Mattersight for $3.32 per share of common stock, and included a request for exclusivity.

47.     Also on March 9, 2018, Party B delivered a letter to Union Square indicating that while Party B remained interested in pursuing an acquisition of Mattersight, it did not believe the sale of Mattersight through an auction process would allow Party B to effectively evaluate such an acquisition.  Despite Party B offering $0.16 per share more than NICE, the Board did not agree to negotiate exclusively with Party B.

48. On March 11, 2018, Party E delivered to Union Square a non-binding letter of intent indicating a willingness to acquire Mattersight for $2.77 per share of common stock in cash.

49. On March 12, 2018, a representative of Party B reiterated to defendant Conway that Party B would not submit a proposal to acquire Mattersight unless given the opportunity to conduct additional diligence on an exclusive basis and outside of the auction process.

50. On March 13, 2018, the Board held a special meeting and directed Union Square to communicate to NICE that if NICE would increase its offer price per share of common stock and the parties could reach resolution on the matters identified in NICE's issues list regarding the draft Merger Agreement, Mattersight would consider entering into an exclusivity arrangement with NICE, and, if NICE was unwilling to increase its offer price, to recommend to Party E that it submit a revised proposal with a higher per share price and additional clarity with respect to its ability to finance a potential acquisition of Mattersight.

51. On March 15, 2018, representatives of NICE and Union Square discussed proposed changes to NICE's proposal and NICE indicated it would not increase the proposed purchase price and it had not reviewed Mattersight's response to NICE's issues list on the initial draft of the Merger Agreement.

52. On March 16, 2018, Party E delivered to Union Square a revised non-binding letter of intent indicating its willingness to acquire Mattersight for $3.45 per share of common stock in cash, subject to completion of additional due diligence, along with a request for exclusivity.

53. On March 17, 2018, the Board held a special meeting, and despite Party E's improved and superior offer of $3.45 per share and NICE's indication that it would not increase

its proposed purchase price of $3.32 per share of common stock, the Board inexplicably authorized management to continue negotiations with NICE and enter into an exclusivity agreement on behalf of Mattersight with NICE on substantially the terms presented to the Board.

54.     Later on March 17, 2018, Mattersight and NICE executed an exclusivity agreement providing for an exclusivity period expiring at 5:00 pm Eastern Time on April 15, 2018, subject to a single seven-day extension until 5:00 p.m. Eastern Time on April 22, 2018, if the parties were continuing to negotiate in good faith.

55.     On April 20, 2018, representatives of NICE contacted representatives of Union Square and indicated that based on findings during NICE's confirmatory due diligence, NICE was decreasing the proposed offer price to $2.70 per share of common stock.

56.     Later on April 20, 2018, the Board held a special meeting and determined not to break exclusivity with NICE in an attempt to achieve a higher price for the Company from other bidders, but instead authorized management to accept NICE's lower proposed purchase price. The Board's decision was partly based on a downwardly revised set of financial projections, which purportedly exhibited management's expectations regarding Mattersight's future financial performance (as supplemented on April 21, 2018 to include the fiscal years 2020 through 2022, the "April Projections").  The eleventh hour sensitivity to the projections raises serious questions about the validity of the changes to the projections and necessitates full disclosure on the changes to the projections so Mattersight stockholders can assess whether they were made to support NICE's decreased Offer Price and make NICE's offer look reasonable in relation to the Company's standalone prospects.

57.     On April 25, 2018, the Board met and Union Square delivered to the Board its fairness opinion.  Later on April 25, 2018, Mattersight and NICE executed and delivered the

11

Merger Agreement and the executive officers, directors and certain affiliated stockholders of

Mattersight executed and delivered tender and support agreements to NICE.

58.     On May 10, 2018, Purchaser commenced the Offer.

**The Proposed Transaction**

59.     On April 26, 2018 Mattersight issued a press release announcing the Proposed

Transaction which stated, in relevant part:

> CHICAGO, April 26, 2018 -- Mattersight Corporation (NASDAQ:MATR), the pioneer in personality-based software applications, today announced that it has entered into a definitive agreement to be acquired by an affiliate of NICE Ltd., the worldwide leading provider of both cloud and on-premises enterprise software solutions that empower organizations to make smarter decisions based on advanced analytics of structured and unstructured data. Under the terms of the agreement, NICE will launch a tender offer to purchase all outstanding shares of Mattersight's common and preferred stock, pursuant to which holders of Mattersight's common stock will receive $2.70 per common share in cash and holders of Mattersight's outstanding preferred stock will receive $7.80 per share in cash, plus accrued and unpaid dividends as of immediately prior to the closing. The per share purchase price of Mattersight's common stock represents a 26% premium to the per share closing price of Mattersight's common stock on the Nasdaq Global Market on April 25, 2018, the last trading day prior to the announcement of the transaction, and a 27% premium to the 30-day weighted-average price per share of Mattersight's common stock.

> "Our solutions drive significant business value for some of the most recognized brands on the planet, but we've lacked the resources to rapidly accelerate our growth. This transaction creates a great opportunity for Mattersight's customers and employees, as NICE brings complementary products, a substantial distribution engine and a strong brand that allow us to accelerate our go-to-market strategy" said Kelly Conway, CEO of Mattersight. "We are excited to work with NICE to bring our personality-based applications to the global market and continue innovating with our current and future customers."

> Mattersight expects the integration of NICE analytics powered by Nexidia and Mattersight's behavioral analytics technology and domain expertise will allow organizations to enjoy the market's most advanced analytics in the cloud, driving personalization and smart connections in real time.

> "Analytics is the cornerstone of NICE's strategy of creating a new customer service paradigm with CXone and Adaptive WFO," said Barak Eilam, CEO of NICE. "We were very impressed with Mattersight's innovative technology and

domain expertise, as well as by their long standing strategic relationships with some of the largest customer service organizations. This acquisition reaffirms our commitment to delivering analytics in the cloud and to be at the forefront of the analytics market."

The Board of Directors of Mattersight has approved the transaction. The transaction is expected to close in the second half of 2018, subject to completion of the tender offer, as well certain regulatory approvals and other customary closing conditions. The transaction will be funded from NICE's cash on hand.

**Insiders' Interests in the Proposed Transaction**

60.    NICE and Mattersight insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Mattersight.

61.    Notably, it appears the Company's Chief Operating Officer, David Gustafson ("Gustafson"), has secured employment for himself upon consummation of the Proposed Transaction.  According to the Recommendation Statement, on April 25, 2018 Gustafson entered into an agreement with Mattersight and Parent, amending certain terms of Gustafson's existing employment agreement with Mattersight (the "Gustafson Employment Agreement Amendment").  Pursuant to the Gustafson Employment Agreement Amendment, Gustafson will continue with the post-close combined company as "VP and Head of Mattersight."  The Gustafson Employment Agreement Amendment also provides that Mattersight will recommend that NICE's board of directors grant Gustafson specified awards of NICE restricted stock units.

62.    Mattersight insiders stand to reap substantial financial benefits for securing the deal with NICE.  Notably, according to the Company's Proxy Statement on Schedule 14A filed with the SEC on April 5, 2018, defendant Coxe and his affiliated entities own approximately 61% of Mattersight's preferred stock and will receive the Preferred Offer Price in the Proposed

Transaction.  Additionally, all outstanding Company options will vest and be converted into the right to receive cash payments.  The following table sets forth the cash payments that the Company's non-employee directors and executive officers stand to receive in connection with their preferred stock and outstanding equity awards:

| Name | Shares of Common Stock (#) (1) | Cash Consideration for Common Stock ($) (2) | Shares of Preferred Stock (#) (3) | Cash Consideration for Preferred Stock ($) (4) | Shares Subject to In-the-Money Options (#) (5) | Cash Consideration for In-the-Money Options ($) (6) | Aggregate Cash Consideration ($) |
|---|---|---|---|---|---|---|---|
| *Non-Employee Directors* | | | | | | | |
| Tench Cox & affiliated entities | 3,634,734 | 9,813,782 | 1,008,907 | 9,978,090 | 10,000 | 1,500 | 19,793,372 |
| Philip Dur | 52,275 | 141,143 | — | — | 10,000 | 1,500 | 142,643 |
| Henry Feinberg | 198,177 | 535,078 | — | — | 10,000 | 1,500 | 536,578 |
| John Kohler | 42,600 | 115,020 | — | — | 10,000 | 1,500 | 116,520 |
| Michael Murray | 583,553 | 1,575,593 | 23,243 | 229,873 | 10,000 | 1,500 | 1,806,966 |
| John Staley | 110,718 | 298,939 | — | — | 10,000 | 1,500 | 300,439 |
| *Executive Officers* | | | | | | | |
| Kelly Conway* | 972,091 | 2,624,646 | 3,862 | 38,195 | — | — | 2,662,841 |
| David Mullen* (7) | 179,218 | 483,889 | — | — | — | — | 483,889 |
| David Gustafson | 313,413 | 846,215 | — | — | — | — | 846,215 |
| Christopher Danson | 152,954 | 412,976 | 2,356 | 23,301 | — | — | 436,277 |

63.     Moreover, if they are terminated in connection with the Proposed Transaction, Mattersight's named executive officers are set to receive substantial cash payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites/ Benefits ($) (3) | Total ($) |
|---|---|---|---|---|
| Kelly Conway | 1,200,000 | 221,935 | 32,022 | 1,453,957 |
| David Mullen | 273,594 | 342,004 | — | 615,598 |
| David Gustafson | 565,703 | 454,734 | 17,580 | 1,038,017 |
| Christopher Danson | 557,000 | 302,694 | 13,308 | 873,002 |

## The Recommendation Statement Contains Material Misstatements and Omissions

64.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Mattersight's stockholders.    The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

14

65.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Mattersight's financial projections, including the financial projections relied upon by Mattersight's financial advisor, Union Square; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Union Square; and (iii) Mattersight insiders' potential conflicts of interest.  Accordingly, Mattersight stockholders are being asked to make a tender or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Mattersight's Financial Projections***

66.     The Recommendation Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

67.     On April 20, 2018, five days before the parties executed the Merger Agreement, NICE revised its proposal from $3.32 per share to $2.70 per share.  That same day, Mattersight's management created the April Projections, a downwardly revised set of financial projections, which purportedly exhibited management's expectations regarding Mattersight's future financial performance.   Although the Recommendation Statement discloses revenue and adjusted EBITDA for the prior set of projections Mattersight management created in February 2018 (the "February Projections"), the Recommendation Statement fails to fully disclose the February Projections.  Specifically, the Recommendation Statement fails to disclose (i) total revenue; (ii) net income (loss); (iii) EBITDA; (iv) adjusted EBITDA; (v) operating income (EBIT); (vi) net operating profit after tax; (vii) depreciation and amortization; (viii) (increase)/decrease in working capital; (ix) capital expenditures; (x) stock-based compensation; and (xi) unlevered free cash flow.  Without this omitted set of projections, Mattersight stockholders cannot assess the

eleventh hour revision to the Company's projections and whether the revision was proper or was engineered to depress the future financial outlook of the Company to make the Offer Price appear more favorable.

68.     In addition, with respect to the April Projections, the Recommendation Statement fails to disclose certain line items utilized by Mattersight's financial advisor Union Square in connection with its fairness opinion.   For example, in connection with Union Square's *Discounted Cash Flow Analysis*, the Recommendation Statement sets forth:

> To account for future share dilution to current stockholders, **stock-based compensation expenses** were not added back in the calculation of unlevered free cash flow. . . . The terminal value was derived by applying enterprise value to LTM EBITDA multiples, selected upon the application of Union Square's professional judgment and experience, ranging from 14.0x to 22.0x to a terminal year estimate of the **EBITDA** to be generated by Mattersight in 2022.

Recommendation Statement at 29-30 (emphasis added).   Yet, the Recommendation Statement fails to disclose the following projection line items: (i) stock-based compensation expenses; and (ii) EBITDA.

69.     The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of Mattersight's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Union Square's Financial Analyses***

70.     The Recommendation Statement describes Union Square's fairness opinion and the various valuation analyses performed in support of its opinion.   However, the description of Union Square's fairness opinion and analyses fails to include key inputs and assumptions underlying the analyses.   Without this information, as described below, Mattersight's public stockholders are unable to fully understand these analyses and, thus, are unable to determine

what weight, if any, to place on Union Square's fairness opinion in determining whether to tender their shares in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Mattersight's stockholders.

71. With respect to Union Square's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) terminal year EBITDA; (ii) the inputs and assumptions underlying the discount rates ranging from 12.1% to 16.1%; (iii) the stock-based compensation expenses that were not added back in the calculation of unlevered free cash flow; and (iv) the implied perpetuity growth rates resulting from the analysis.

72. With respect to Union Square's *Comparable Public Company Trading Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Union Square in the analysis.

73. With respect to Union Square's *Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Union Square in the analysis.

74. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

75.     The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of Mattersight's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

**_Material Omissions Concerning Company Insiders' Potential Conflicts of Interest_**

76.     The Recommendation Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's directors and executive officers.

77.     The Recommendation Statement sets forth that:

> As of the date of this Schedule 14D-9, other than as set forth under the caption "— _Arrangements with Directors and Executive Officers of Mattersight — Employment Agreements Following Closing_," no current executive officer of Mattersight has entered into any material agreement, arrangement, or understanding with Parent or its affiliates with respect to employment with the Surviving Corporation or any of its subsidiaries. Although it is possible that certain other of Mattersight's current executive officers will enter into material arrangements with Parent or its affiliates regarding employment (and severance arrangements) with, and the right to purchase or participate in the equity of, Parent, as of the date of this Schedule 14D-9, no such material agreements have been reached between members of Mattersight's current management and representatives of Parent or its affiliates regarding any such arrangements and there can be no assurance that any parties will reach an agreement.

Recommendation Statement at 8.

78.     However, the Recommendation Statement fails to disclose the details of any employment-related discussions and negotiations that occurred between NICE and Mattersight executive officers, including who participated in all such communications, when they occurred, and their content, as well as whether any of NICE's prior proposals or indications of interest mentioned management retention or board membership in the combined company.

79.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of

management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

80.     The omission of this information renders the statements in the "Background of the Merger" and "Employee Matters Following Closing" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

81.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to tender their shares or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

82.     Plaintiff repeats all previous allegations as if set forth in full.

83.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Mattersight stockholders to tender their shares in the Offer.

84.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

85.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

86.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

87.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Offer.   Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

88.     Plaintiff repeats all previous allegations as if set forth in full.

89.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the tender offer commenced in conjunction with the Proposed Transaction.

90.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

91.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

92.     Plaintiff repeats all previous allegations as if set forth in full.

93.     The Individual Defendants acted as controlling persons of Mattersight within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Mattersight and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

94.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

95.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

96.    In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

97.    By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Mattersight, and against defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 16, 2018

**O'KELLY ERNST & JOYCE, LLC**

*/s/ Ryan M. Ernst*
Ryan M. Ernst (#4788)
Daniel P. Murray (#5785)
901 N. Market St., Suite 1000
Wilmington, DE 19801
Tel.: (302) 778-4000
Email: rernst@oelegal.com
        dmurray@oelegal.com

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*